# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PITT PENN HOLDING COMPANY, INC., <u>et al.</u>, | ) | Case No. 09-11475 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| INDUSTRIAL ENTERPRISES OF AMERICA, INC., | ) | Adv. No. 11-51879 |
| | ) | Related to Adv. Docket Nos. 6, 11, 15, 16, and 18 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TABOR ACADEMY, HAWKEN SCHOOL, and THE LOU FREY INSTITUTE OF GOVERNMENT AND POLITICS, | ) | |
| | ) | |
| Defendants. | ) | |

Christopher D. Loizides
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801

Adam Mitzner
PAVIA & HARCOURT LLP
590 Madison Avenue
New York, NY 10022

*Counsel for Industrial Enterprises of America, Inc.*

David S. Stratton
Michael J. Custer
John H. Schanne, II
PEPPER HAMILTON LLP
1313 N. Market Street, Suite 5100
Wilmington, DE 19899

D. Ross Martin
Andrew G. Devore
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199

*Counsel for Tabor Academy*

<u>**OPINION**</u>[1]

Before the Court is the motion to dismiss (the "Motion") [Adv. No. 11-51879, Adv.

Docket No. 6], filed by Tabor Academy ("Tabor").  By the Motion, Tabor seeks the dismissal of

the complaint (the "Complaint") [Adv. No. 11-51879, Adv. Docket No. 1] of Industrial

Enterprises of America, Inc., f/k/a Advanced Bio/Chem, Inc. ("IEAM" or the "Plaintiff").  For

the following reasons, the Court will grant in part and deny in part the Motion.

## I.  <u>BACKGROUND</u>

On May 1, 2009 (the "Petition Date"), IEAM and various of its affiliates filed voluntary

chapter 11 petitions under title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the District of Delaware.  On April 30, 2011, the Plaintiff

filed the Complaint against Tabor, Hawken School, and The Lou Frey Institute of Government

and Politics (collectively, the "Defendants"), and thereafter, Tabor filed the Motion to dismiss

the Complaint in its entirety as it pertains to Tabor.

In broad brush, the Plaintiff alleges an elaborate scheme (the "Alleged Scheme")

masterminded by two former executives of IEAM, John Mazzuto and James Margulies, to

defraud IEAM and its shareholders and creditors out of millions of dollars.  The Plaintiff asserts

that, among other acts of misconduct, Mazzuto and Margulies inflated the value of IEAM stock,

illegally issued shares of IEAM, and retained at least some of the proceeds of the sale of such

stock, all to IEAM's detriment.  To perpetrate the improper issuance of IEAM stock, the Plaintiff

alleges that Mazzuto and Margulies illegally used a Form S-8 employee stock option plan, which

---

[1]       "The court is not required to state findings or conclusions when ruling on a motion under
Rule 12 . . . ." FED. R. BANKR. P. 7052(a)(3).  Accordingly, the Court herein makes no findings
of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy
Procedure.

IEAM filed with the Securities and Exchange Commission (the "SEC"), as a conduit for distributing millions of shares to various non-employees, including Tabor and the other Defendants. The Plaintiff contends that Margulies and Mazzuto channeled IEAM shares—some of which were issued as unrestricted rather than restricted shares in contravention of Form S-8 regulations—through themselves to third parties who would not otherwise have been entitled to receive such stock.

Generally, the Plaintiff alleges that Tabor, a preparatory school in Massachusetts, received IEAM stock without providing any consideration in exchange for such stock, and then sold the stock on the open market at a profit. The Plaintiff asserts that between January 2005 and August 2007, Tabor received a total of approximately 305,000 IEAM shares of and subsequently sold such shares for approximately $1.52 million. The Plaintiff further asserts that Tabor did not provide any value in exchange for the IEAM stock it received. Instead, the Plaintiff alleges that Mazzuto, IEAM's then-CEO, caused the issuance of the IEAM stock to Tabor, his alma mater, in the form of "charitable gifts." The Plaintiff asserts that in return for this stock gift, Tabor dedicated the "Mazzuto Family Math Wing" in Mazzuto's honor. The Plaintiff contends that each transfer of IEAM stock to Tabor was illegal because Tabor would not have qualified for the receipt of Form S-8 shares and because the shares that Tabor received were freely tradable shares rather than the restricted shares permitted under the Form S-8 plan.

Specifically, the Plaintiff asserts the following claims against Tabor for its role in the Alleged Scheme: (1) fraudulent transfers under 11 U.S.C. § 548; (2) unjust enrichment; (3) fraudulent conveyances under 11 U.S.C. § 544; and (4) recovery of fraudulent transfers under § 550. By the Motion, Tabor seeks dismissal, with prejudice, of these claims. Tabor offers several

reasons in support of the Motion.  As to the fraudulent transfer claims, Tabor contends that the transferred stock at issue was not issued by IEAM and was thus not property of the estate.  Tabor further alleges that such stock had no value and that IEAM cannot simultaneously assert that such stock had value that is now recoverable by the Plaintiff while also asserting that IEAM was insolvent when the stock transfers were made.  Tabor also argues that the intentional fraud allegations fail because the Plaintiff is judicially estopped from asserting that IEAM made the transfers with the requisite fraudulent intent when it has recently filed certain complaints in this Court against former IEAM attorneys and insiders in which it has alleged that IEAM was a victim of various frauds perpetrated by these defendants.  Tabor additionally asserts that § 546(e) insulates the allegedly fraudulent stock transfers, that the Plaintiff has failed to identify a creditor that could assert the § 544 claim, and that certain of the allegedly fraudulent transfers under §§ 544 and 548 are outside the applicable statute of limitations.  As to the unjust enrichment claim, Tabor contends that if the claim is construed as an estate cause of action, then the claim must fail because IEAM could not have been harmed by the stock transfers.  On the other hand, if the claim is construed as a shareholder claim, then Tabor argues that the claim is outside the applicable statute of limitations, and  that the Plaintiff lacks standing and has failed to identify the shareholders on whose behalf the claim is being alleged.

The Plaintiff objects to the Motion by opposing all grounds for dismissal that Tabor has advanced.  The Plaintiff asserts that the stock at issue was valuable property of the estate, and was transferred from IEAM to Tabor, albeit indirectly.  The Plaintiff also contends that both judicial estoppel and § 546(e) are inapplicable to its fraudulent transfer claims.  Finally, the

Plaintiff argues that all of its claims are well pleaded and timely.  This matter has been fully briefed and is ripe for decision.[2]

## II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

## III.  STANDARD OF REVIEW

### A.    Federal Rules of Civil Procedure 8 and 9

To survive a motion to dismiss, a complaint must comport with the requisite pleading requirements set forth in the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 8(a)(2), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008(a), requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The U.S. Supreme Court has stated that the purpose of Rule 8 is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted).[3]  The Supreme Court and the Third Circuit Court of Appeals both require that a complaint contain more than mere assertions.  Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a

---

[2]    The Court notes that Tabor has requested that the Court hear oral argument on the Motion [Adv. Docket No. 18].  The Court respectfully declines Tabor's request for oral argument and will decide the matter on the parties' written submissions.

[3]    The Supreme Court explained that "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Twombly, 550 U.S. at 555 n.3.

'showing,' rather than a blanket assertion, of entitlement to relief."); <u>Fowler v. UPMC</u>

<u>Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the

plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts.")

(citations omitted).[4]  Thus "it is clear that conclusory or 'bare-bones' allegations will no longer

survive a motion to dismiss." <u>Fowler</u>, 578 F.3d at 210.[5]

Where a plaintiff alleges a fraud-based claim, as the Plaintiff here has alleged, such a

claim must meet the elevated pleading standard of Federal Rule of Civil Procedure 9(b), made

applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009, to

withstand dismissal.  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).  The Third

Circuit has explained that the purpose of Rule 9(b) is to ensure that plaintiffs plead with

---

[4]     The Third Circuit has observed that, in light of the Supreme Court's recent decisions in
<u>Twombly</u> and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), "pleading standards have seemingly
shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff
to plead more than the possibility of relief to survive a motion to dismiss." <u>Fowler</u>, 578 F.3d at
210.  The Supreme Court noted that while "Rule 8 marks a notable and generous departure from
the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of
discovery for a plaintiff armed with nothing more than conclusions." <u>Iqbal</u>, 129 S. Ct. at 1950.

[5]     To survive a motion to dismiss, "[t]he plaintiff must put some 'meat on the bones' by
presenting sufficient factual allegations to explain the basis for its claim." <u>Buckley v. Merrill
Lynch & Co., Inc. (In re DVI, Inc.)</u>, Bankr. No. 03-12656, Adv. No. 08-50248, 2008 WL
4239120, at *4 (Bankr. D. Del. Sept. 16, 2008).  "[L]egal conclusions can provide the framework
of a complaint," <u>Iqbal</u>, 129 S.Ct. at 1950, but must be accompanied by facts because "a
formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555
(citation omitted).  The Third Circuit has also cautioned that "conclusory allegations or legal
conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."
<u>See also</u> <u>Gen. Motors Corp. v. New A.C. Chevrolet, Inc.</u>, 263 F.3d 296, 333 (3d Cir. 2001)
(internal quotation marks omitted) (quoting 2 James Wm. Moore, Moore's Federal Practice
§ 12.34[1][b], at 12-61 to 12-63 (3d ed. 2001)).

particularity the circumstances of the alleged fraud to "place the defendants on notice of the

precise misconduct with which they are charged, and to safeguard defendants against spurious

charges of immoral and fraudulent behavior."  Seville Indus. Machinery Corp. v. Southmost

Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985).  It is not

a defendant's fraudulent intent that must be pleaded with particularity, but the circumstances

constituting the fraud.  The Third Circuit has indicated that "allegations of 'date, place or time'

fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative

means of injecting precision and some measure of substantiation into their allegation of fraud."

Id.  The Court notes that whereas intentional fraudulent transfer claims must be pleaded with

particularity under Rule 9(b), constructively fraudulent transfer claims are nonetheless governed

by Federal Rule of Civil Procedure 8.  See, e.g., China Resource Prods. (U.S.A.) Ltd. v. Fayda

Int'l, Inc., 788 F. Supp. 815, 819 (D. Del. 1992); Charys Liquidating Trust v. McMahan Sec. Co.

(In re Charys Holding Co.), 443 B.R. 628, 632 n.2 (Bankr. D. Del. 2010); Astropower

Liquidating Trust v. Xantrex Tech., Inc., (In re AstroPower Liquidating Trust), 335 B.R. 309,

333 (Bankr. D. Del. 2005).  Contra OHC Liquidation Trust v. Nucor Corp. (In re Oakwood

Homes Corp.), 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b)

applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or

548, whether it is based upon actual or constructive fraud."); Pardo v. Gonzaba (In re APF Co.),

308 B.R. 183, 188 (Bankr. D. Del. 2004).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant

to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by

Federal Rule of Bankruptcy Procedure 7012(b), is aimed to test the sufficiency of the factual

7

allegations in the plaintiff's complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)

(citations omitted).  The chief inquiry when ruling on a motion to dismiss is "not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by

Harlow v. Fitzgerald, 457 U.S. 800 (1982).  The movant carries the burden of demonstrating that

dismissal is appropriate.  Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.),

496 F. Supp. 2d 404, 408 (D. Del. 2007).

      In light of the U.S. Supreme Court's recent decisions in Twombly and Ashcroft v. Iqbal,

129 S. Ct. 1937 (2009), the Third Circuit has instructed courts to conduct a two-part analysis

when considering a motion to dismiss for failure to state a claim.  Fowler, 578 F.3d at 210.  First,

the Court should separate the factual elements from the legal elements of a claim.  Id.  The court

must assume the veracity of the factual allegations set forth in the complaint, draw all reasonable

inferences from the facts alleged, and construe all allegations in the light most favorable to the

plaintiff.  Iqbal, 129 S.Ct. at 1949-50; Rea v. Federated Investors, 627 F.3d 937, 940 (3d Cir.

2010) (citation omitted).  The credibility of the facts alleged by the plaintiff are not at issue in a

motion to dismiss because "Rule 12(b)(6) does not countenance . . . dismissals based on a

judge's disbelief of a complaint's factual allegations."  Twombly, 550 U.S. at 556 (citations

omitted).[6]  However, the presumption of truth does not extend to any conclusory statements of

law because the Supreme Court has held that "on a motion to dismiss, courts 'are not bound to

---

[6]    See also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) ("[O]n a Rule
12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed
merely because it appears unlikely that the plaintiff can prove those facts or will ultimately
prevail on the merits.").

accept as true a legal conclusion couched as a factual allegation.'" Id. at 555.[7]    The Court may therefore disregard any legal conclusions in the complaint. Fowler, 578 F.3d at 210-11.

Second, the Court must determine whether the factual allegations "are sufficient to show that the plaintiff 'has a plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950) (internal quotation marks omitted). The incorporation of only some factual allegations may not suffice at the pleading stage because the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.[8] Considering the merits of a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted). Where a complaint fails to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence [to support the claim]," the motion to dismiss must be granted as to such claim. Twombly, 550 U.S. at 556. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950 (citation omitted).

---

[7]    See also Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.") (citations omitted) (internal quotation marks omitted).

[8]    The Supreme Court's plausibility standard does not require a plaintiff to demonstrate a likelihood of success at trial, but it does require showing "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 1950 (quoting Rule 8(a)(2)).

## IV.  DISCUSSION

The Motion requires the Court to consider whether the Plaintiff has alleged sufficient facts in the Complaint that, if taken as true and construed in the light most favorable to the Plaintiff, would enable the Plaintiff to plausibly establish fraudulent transfer claims under §§ 548 and 544 and a claim for unjust enrichment against Tabor.  The Court addresses each of these claims in turn.

### A.      Actual and Constructively Fraudulent Transfer Claims (Counts I and III)

The Plaintiff asserts fraudulent transfer claims against Tabor pursuant to §§ 544 and 548 of the Bankruptcy Code.  The Court first discusses the Plaintiff's § 548 claims, but notes that the elements of a fraudulent transfer claim under § 548 generally do not substantially vary from the elements of a fraudulent transfer claim under § 544, such that the Plaintiff's success in surviving a motion to dismiss with respect to its § 544 claims in Count III will mirror its success with respect to its § 548 claim in Count I.  In Count I, the Plaintiff alleges that Tabor's receipt of the IEAM shares provides a sufficient factual basis for both actual and constructively fraudulent transfer claims under § 548.

### 1.      Whether IEAM had a Property Interest in the Transferred Stock

As a preliminary matter, Tabor argues that the IEAM stock that it acquired was transferred to it not by IEAM, but by a third-party stockholder, viz., Mazzuto, such that there were no actual transfers by IEAM subject to avoidance.  Tabor also argues that IEAM had no interest in the transferred stock and that such stock had no intrinsic value.  Tabor thus contends that the allegedly fraudulent transfers are not voidable or recoverable under the Bankruptcy Code.

10

With respect to Tabor's first contention, the Court finds that the Plaintiff has sufficiently alleged that a transfer subject to avoidance under the Bankruptcy Code indeed occurred.  The Bankruptcy Code defines "transfers" broadly as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(D).  Relying upon this statutory provision and its legislative history, courts have stated that "any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property."  Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1282 (9th Cir. 1996) (quoting S. Rep. No. 95-989, at 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813); Official Comm. of Unsecured Creditors of High Strength Steel, Inc. v. Lozinski (In re High Strength Steel, Inc.), 269 B.R. 560, 567 (Bankr. D. Del. 2001) (quoting Bernard, 96 F.3d at 1282).[9]  Plaintiff has adequately pleaded that Tabor acquired IEAM stock via Mazzuto, then-CEO of IEAM.  The Court thus finds that the Plaintiff has sufficiently alleged at this stage that indirect stock transfers between IEAM and Tabor had occurred, through a third-party intermediary.

With respect to Tabor's second contention, the Court finds that the Plaintiff has sufficiently pleaded that IEAM indeed had an interest in the transferred stock at issue.  The Bankruptcy Code defines the debtor's property broadly as "all legal or equitable interests of the debtor."  11 U.S.C. § 541(a)(1).  The Supreme Court has explained that "Congress intended a

---

[9]    The Court notes that Tabor cites to Pardo v. Avanti Corporate Health Sys. (In re APF Co.), 274 B.R. 634 (Bankr. D. Del. 2001) for the proposition that a corporation's stock is not property of the estate.  However, in Pardo, the court did not hold that a corporation's stock is not property of the estate, and instead found that the plaintiff had made "at least a colorable claim for relief" and thereby denied the defendant's motion to dismiss the fraudulent transfer claim on that ground.  Id. at 637-38.

broad range of property to be included in the estate." <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 204 (1983).[10] Tabor relies upon <u>Global Crossing Estate Representative v. Winnick</u>, No. 04 Civ. 2558, 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) for the proposition that the transferred IEAM stock had no value.  In <u>Global Crossing</u>, the District Court for the Southern District of New York rejected the line of decision that a corporation has no property interest in its unissued stock.  In support of its decision, the court reasoned that "an issuance of stock involves a corporation exchanging stock in itself for money or other valuable property." <u>Global Crossing</u>, 2006 WL 2212776, at *8.  The <u>Global Crossing</u> court emphasized that "[g]iven a corporation's power to transfer stock to third parties in exchange for value, the argument that the corporation lacks an interest in the stock itself at the time of issuance blinks economic reality." <u>Id.</u>

However, the <u>Global Crossing</u> court also explained that absent justification, the estate representative "may not argue out of one side of its mouth that [the debtor] was in dire financial straits, completely insolvent, and destined for failure when this stock was transferred, and out of the other side argue that its stock had tremendous value that the creditors of [the debtors] should be permitted to now recover." <u>Id.</u> at *9.  Thus, the specific facts in that case led the court in <u>Global Crossing</u> to conclude nonetheless that the debtor's unissued stock was of no value to the debtor because of the repeated and emphatic assertions by the plaintiff that the debtor was doomed to fail at the time the allegedly fraudulent stock transfers were made.[11] <u>Id.</u>

---

[10]    The Supreme Court has held that property of the debtor, as it applies to avoidance actions, is to be construed in the same way as property of the estate within the meaning of § 541. <u>Begier v. I.R.S.</u>, 496 U.S. 53, 58-59 (1990).

[11]    The <u>Global Crossing</u> court was not persuaded by the plaintiff's reliance upon the market value of the stock prior to the debtor's petition date in light of the plaintiff's constant assertions

The court in <u>Global Crossing</u> acknowledged that "under certain circumstances the stock of an insolvent corporation may have value based on its estimated future profitability," even though such circumstances were absent in that case.  <u>Id.</u>  <u>See also</u> <u>Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys., Inc.)</u>, 311 B.R. 781, 791 (Bankr. E.D. Mo. 2004) (citations omitted) ("Some courts have held that the equity interest of an insolvent corporation is worthless as a matter of law.  The better position, however, is that the equity interest of an insolvent corporation may have some value because the equity holders are entitled to share in the corporation's profits if it becomes profitable in the future.").  This Court concurs that a mere allegation of insolvency does not automatically negate all value that a corporation's stock may otherwise have.  <u>See</u> <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 208 (1988) (stating that there is "interest in potential future profits of a now-insolvent business").  The Court is persuaded by the reasoning in <u>Global Crossing</u> and finds that for the purpose of considering a motion to dismiss, the Plaintiff has adequately alleged that IEAM had a property interest in its unissued stock.  As in <u>Global Crossing</u>, the Plaintiff here has asserted that IEAM was insolvent when the stock transfers at issue were made.  Complaint ¶ 28.  However, unlike the facts in <u>Global Crossing</u>, the Court here does not find that the Plaintiff has painted quite as dire a financial picture of IEAM as compared to the debtor in <u>Global Crossing</u>.  The Plaintiff has alleged insolvency but has not asserted that IEAM was doomed to fail and had no hope of financial recovery.  Based upon the Complaint alone, the Court cannot conclude that IEAM had passed the point of no return, because there are no allegations about the debtor's assets, debts, and equity, and because at this stage, there is no reason for the Court to conclude that IEAM had

that the debtor was perpetually insolvent and had recurring financial difficulties.  <u>Global Crossing</u>, 2006 WL 2212776, at *9.

no potential for future profitability.  Taking all well-pleaded allegations as true and making all

reasonable inferences in favor of the Plaintiff, the Court concludes that the Plaintiff has

adequately alleged that the transferred stock may have had at least some value to IEAM,

especially given the high sale price the Defendants fetched for it on the open market.

### 2.    Actual Fraudulent Transfer Claim under § 548

The Plaintiff alleges that the transfers of IEAM stock to Tabor are voidable as actual

fraudulent transfers.  Section 548(a)(1) of the Bankruptcy Code permits a debtor to avoid any

transfer of an interest in its property that was made "with actual intent to hinder, delay, or

defraud any entity to which the debtor was or became, on or after the date that such transfer was

made . . . indebted."  11 U.S.C. § 548(a)(1)(A).  The Court finds that the Plaintiff has alleged

with the requisite particularity the specific transactions that are alleged to be intentional

fraudulent transfers.  Complaint ¶¶ 37-38.

### a.    Fraudulent Intent

The Court finds that the Plaintiff has alleged sufficient facts to support the requisite

fraudulent intent.  In the absence of direct evidence, courts often rely upon certain "badges of

fraud" as circumstantial evidence of actual fraudulent intent.  Official Comm. of Unsecured

Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners (In re Fedders N. Am., Inc.),

405 B.R. 527, 545 (Bankr. D. Del. 2009).  See also Charys Liquidating Trust v. Growth Mgmt.,

LLC (In re Charys Holding Co.), Bankr. No. 08-10289, Adv. No. 10-50204, 2010 WL 2774852,

at *5 (Bankr. D. Del. July 14, 2010).  These badges of fraud include, inter alia: (1) the

relationship between the debtor and the transferee; (2) the consideration for the transfer; (3) the

insolvency or indebtedness of the debtor; (4) the portion of the debtor's estate that was

14

transferred; (5) any reservation of benefits, control, or dominion by the debtor over the

transferred property; and (6) the secrecy or concealment of the transaction.  Goldman Sachs, 405

B.R. at 545.  Whereas the presence of a single badge is not conclusive evidence of intent, the

presence of several badges has been found to "provide[] conclusive evidence of actual intent to

defraud."  Dobin v. Hill (In re Hill), 342 B.R. 183, 198 (Bankr. D.N.J. 2006).

 Here, the Plaintiff alleges that the requisite fraudulent intent is evidenced by the fact that

Tabor did not give any value in exchange for the IEAM shares that it received.  Complaint ¶ 57.

However, the Plaintiff concedes that the transferred shares were "charitable gifts," which by

definition are bestowed upon a recipient without the expectation of reciprocal consideration.

But, the Plaintiff also alleges that the particular shares that Tabor received were issued pursuant

to the Form S-8 plan, which authorized the issuance of restricted shares to only IEAM

employees, directors, and officers.  Complaint ¶¶ 41-42.  The Plaintiff further asserts that the

Form S-8 shares are indistinguishable on their face from freely tradable shares and that IEAM

could not have issued such shares to anyone except an employee, director, or officer.  Complaint

¶¶ 31, 40-42.  Based upon these allegations, the Court finds that the Plaintiff has adequately

pleaded that IEAM, through Mazzuto, transferred the shares at issue to Tabor with the intent to

defraud IEAM's creditors.

### b. <u>Judicial Estoppel</u>

 Tabor argues that the Plaintiff should be judicially estopped from alleging fraudulent

intent in support of its intentional fraudulent transfer claim under § 548(a)(1)(A).  Tabor

contends that the Plaintiff may not argue in this adversary proceeding that IEAM acted with the

requisite fraudulent intent when it made the transfers of IEAM stock at issue to Tabor while

alleging in other adversary proceedings that IEAM was an innocent actor and a victim of frauds perpetrated by and the <u>ultra</u> <u>vires</u> conduct of various former IEAM attorneys and insiders, including the improper issuance of Form S-8 shares by Mazzuto and Margulies.[12]

The Third Circuit has stated that "[j]udicial estoppel prevents a party from 'playing fast and loose with the courts' by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding)." <u>Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns)</u>, 493 F.3d 345, 377 (3d Cir. 2007) (citation omitted). The application of judicial estoppel is only appropriate when the party to be estopped (1) is taking a clearly inconsistent position with one that it has previously taken and (2) would obtain an unfair advantage from such inconsistency. <u>Id.</u> (citation omitted). The purpose of judicial estoppel is "to protect the judicial process by preventing parties from 'deliberately changing positions according to the exigencies of the moment.'" <u>In re Armstrong World Indus., Inc.</u>, 432 F.3d 507, 517 (3d Cir. 2005) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001)). The Third Circuit has explained that judicial estoppel is an "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." <u>Oneida Motor Freight, Inc. v. United Jersey Bank</u>, 848 F.2d 414, 424 (3d Cir. 1988).

---

[12]    On April 30, 2011, IEAM commenced the following adversary proceedings in this Court against various former attorneys and insiders, alleging, <u>inter alia</u>, fraud, civil conspiracy, unjust enrichment, professional malpractice, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conversion: Industrial Enterprises of America, Inc. v. Holland & Knight, LLP [Adv. No. 11-51878], Industrial Enterprises of America, Inc. v. Baker & McKenzie LLP & Martin Weisberg [Adv. No. 11-51767], Industrial Enterprises of America, Inc. v. Ilene Engelberg, Regal Partners Inc. & Sapphire Assocs. [Adv. No. 11-51874], Industrial Enterprises of America, Inc. v. Ardent Advisors, LLC, Brian Corbman, Eric L. Krogius, Kathleen Krogius, Amy L. Almsteier, & Derek A. Peterson [Adv. No. 11-51876], and Industrial Enterprises of America, Inc. v. Computershare Trust Co., Inc., National Financial Services LLC, WFG Investments, Inc., & Chris Cuzalina [Adv. No. 11-51877].

Here, the Court finds that judicial estoppel is not warranted under the circumstances in this case and at this stage in the proceedings.  The Plaintiff has alleged that Mazzuto, IEAM's then-CEO, acted with the requisite fraudulent intent when it transferred the IEAM stock at issue to Tabor.  It is well settled that "corporations act through their directors, officers, and controlling stockholders."  OHC Liquidation Trust v. Credit Suisse (In re Oakwood Homes Corp.), 356 Fed. App'x 622, 627 n.4 (3d Cir. 2009).  See also United States v. Steffen, 251 F.3d 1273, 1276 (9th Cir. 2001) (citing United States v. O'Connor, 874 F.2d 483 (7th Cir. 1989)); O'Connor, 874 F.2d at 488 ("Corporations act through their agents.").  The Plaintiff has therefore sufficiently pleaded that IEAM—to which Mazzuto's conduct and intent may be imputed—acted with the requisite fraudulent intent when it transferred the stock at issue to Tabor.  The fact that the Plaintiff has also asserted in other actions that IEAM was itself a victim of the Alleged Scheme at the hands of Mazzuto and Margulies, and their ultra vires conduct, is not necessarily inconsistent with the Plaintiff's position in this case.  Whereas the latter allegation asserts the Plaintiff's claims against the insiders on behalf of IEAM, the former allegation asserts the Plaintiff's claims against the transferees—in this case, Tabor—of IEAM's property on behalf of IEAM's creditors in its bankruptcy proceedings.  These allegations are not mutually exclusive and either can be proven without negating the other.  Accordingly, the Court finds that judicial estoppel is inappropriate in this case and that the Plaintiff has adequately pleaded its intentional fraudulent transfer claim under § 548(a)(1)(A).

### 3.    Constructively Fraudulent Transfer Claim under § 548

The Plaintiff alleges that the transfers of IEAM shares to Tabor are also voidable as constructively fraudulent transfers under the Bankruptcy Code.  Section 548(a)(1)(B) of the

17

Bankruptcy Code provides that a transfer made for which the debtor does not receive reasonably equivalent value may be deemed constructively fraudulent, irrespective of the actual intent of the debtor, if such transfer was made when the debtor was insolvent, would render the debtor insolvent, would leave the debtor with unreasonably small capital, or was made when the debtor was already unable to service its debts.  11 U.S.C. § 548(a)(1)(B).  To overcome the Motion with respect to the constructively fraudulent transfer claim under § 548, the Plaintiff must plead sufficient facts to show that IEAM did not receive reasonably equivalent value in exchange for its stock, and that IEAM was or became insolvent when such transfers occurred, retained unreasonably small capital as a result thereof, or was unable to pay its debts when such transfers were made.

### a.    Reasonably Equivalent Value

A transfer or obligation is avoidable under § 548(a)(1)(B) only if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation."  11 U.S.C. § 548(a)(1)(B)(i).  The term "reasonably equivalent value" is not defined in the Bankruptcy Code and "courts have rejected the application of any fixed mathematical formula to determine reasonable equivalence."  Peltz v. Hatten, 279 B.R. 710, 736 (D. Del. 2002).  The Third Circuit has held that assessing whether a debtor received reasonably equivalent value in exchange for a transfer or obligation requires a two-step approach.  Pension Transfer Corp. v. Beneficiaries under the Third Amend. to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.), 444 F.3d 203, 212 (3d Cir. 2006).  First, "a court must consider whether, 'based on the circumstances that existed at the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor."  Id. (quoting Mellon Bank, N.A. v. Official Comm. of

<u>Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)</u>, 92 F.3d 139, 144 (3d Cir. 1996).

Second, if the court finds that the debtor received any value, the court must engage in a fact-

driven comparison between such value and the transfer sought to be avoided to determine

"whether the debtor got roughly the value it gave." <u>Id.</u> at 212-13 (citations omitted).  To assess

the reasonable equivalence of the transfer and the value received by the debtor, a court should

"look to the 'totality of the circumstances,' including (1) the 'fair market value' of the benefit

received as a result of the transfer, (2) 'the existence of an arm's-length relationship between the

debtor and the transferee,' and (3) the transferee's good faith." <u>Id.</u> at 213 (quoting <u>Mellon Bank</u>,

92 F.3d at 148-49, 153).

Here, the Plaintiff alleges that IEAM received no consideration in exchange for the

transferred IEAM shares to Tabor.  Complaint ¶ 57.  Tabor does not dispute this allegation, and

the Court finds that the Plaintiff has sufficiently alleged that Tabor acquired the IEAM shares at

issue without providing reasonably equivalent value in exchange for the shares.

### b.    <u>Insolvency</u>

The Bankruptcy Code defines insolvency as the "financial condition such that the sum of

[an] entity's debts is greater than all of such entity's property."  11 U.S.C. § 101(32)(A).  When

determining liability under § 548, a court measures a debtor's solvency "at the time the debtor

transferred value, not at some later or earlier time." <u>Mellon Bank</u>, 92 F.3d at 154 (citation

omitted).  Here, the Plaintiff alleges that "[a]t the time of each transfer of stock to [Tabor], IEAM

. . . was insolvent under 11 U.S.C. § 548(a)(1)(B)(ii)(I)."  Complaint ¶ 62.  The Court concludes

that this allegation is sufficient to survive a motion to dismiss.  <u>See</u> <u>Joseph v. Frank (In re Troll</u>

<u>Commc'ns, LLC)</u>, 385 B.R. 110, 123-24 (Bankr. D. Del. 2008) (finding that insolvency was

adequately pleaded when the plaintiff alleged facts showing that debtors' liabilities exceeded their assets during the year before bankruptcy).

Accordingly, the Court concludes that the Plaintiff has sufficiently alleged that the IEAM stock transfers to Tabor were constructively fraudulent transfers by asserting that IEAM did not receive reasonably equivalent for such transfers and that it was insolvent when such transfers were made.[13]

### 4.    Statute of Limitations for § 548 Claims and Equitable Tolling

The statute of limitations for actions under § 548 restricts avoidance claims to transfers that occurred within two years of a debtor's petition date.  11 U.S.C. § 548(a)(1).  Tabor argues that all alleged transfers that occurred more than two years before the Petition Date, viz., those transfers that occurred prior to May 1, 2007, are barred by the statute of limitations and therefore must be dismissed.

However, the Plaintiff asserts that the Court should apply the equitable tolling doctrine and deem such claims timely nonetheless.  Equitable tolling would stop the statute of limitations from running despite the fact that a claim has already accrued.  Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 425 (3d Cir. 2005).  The Third Circuit has held that equitable tolling is appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  Id. (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387

---

[13]    Because the Court concludes that the Plaintiff's allegation concerning insolvency is sufficient at this stage, it need not address the sufficiency of the Plaintiff's allegations concerning IEAM's unreasonably small capital or its inability to pay its debts when the transfers at issue were made.

(3d Cir. 1994)).  Here, the Plaintiff alleges that the fraudulent conduct of certain former officers

and directors of IEAM and the concealment thereof prevented the Plaintiff from discovering the

fraudulent transfers before the statute of limitations expired..  Complaint ¶ 63.  The Court

concludes that, for the purpose of overcoming this Motion, that the Plaintiff's fraudulent transfer

claims under § 548 are not necessarily time-barred because the Plaintiff has sufficiently alleged

grounds for equitable tolling.[14]

### 5.     Constructively Fraudulent Transfer Claim under § 544

The Plaintiff has alleged that the transfers of IEAM stock to Tabor are also avoidable as

constructively fraudulent transfers under § 544 of the Bankruptcy Code.  Under § 544(b), a

debtor may avoid any transfer of an interest in the debtor's property that is voidable under

applicable state law by a creditor holding an allowable unsecured claim.  11 U.S.C. § 544(b)(1).

However, the Plaintiff has failed to allege the applicable state law upon which its § 544 claim is

grounded, and its failure to identify the applicable law necessitates the Court to conclude that

Tabor has received insufficient notice of the Plaintiff's allegations against it with respect to this

claim.[15]  Case law, especially in light of Twombly and Iqbal, provides that inadequate notice

requires the Court to dismiss the Plaintiff's § 544 claim for failure to state a claim upon which

relief can be granted.  Luster v. Greenhill Capital Partners II, L.L.P. (In re CLK Energy Partners,

LLC), Bankr. No. 09-50616, Adv. No. 09-05042, 2010 WL 1930065 at *4 (Bankr. W.D. La.

---

[14]     For the avoidance of doubt, the Court also concludes that § 546(a)(1) of the Bankruptcy
Code, which provides that where there has been no trustee appointed to administer the
bankruptcy case, an action under §§ 544 or 548 must be commenced within two years of the
debtor's petition date, does not bar the Plaintiff's claims given that the Complaint was filed
within several months of the Petition Date.

[15]     The Court notes that Tabor has not specifically asserted that the Plaintiff's fraudulent
transfer claim under § 544 must fail for failure to specify the applicable state law.

May 12, 2010) (dismissing fraudulent transfer claim, with leave to amend, for failure to identify

non-bankruptcy law upon which the trustee's claim under 11 U.S.C. § 544(b) was based).  See

also Walker v. Sonafi Pasteur (In re Aphton Corp.), 423 B.R. 76 (Bankr. D. Del. 2010)

(dismissing fraudulent transfer claim that recited only generally the elements of UFTA with

"blanket assertions" lacking specific facts about the transfers based upon which avoidance was

sought).

   The Court notes that the Plaintiff asserts in its opposition to the Motion (the

"Opposition") [Adv. No. 11-51879, Adv. Docket No. 15] that Ohio state law should govern its

§ 544(b) claim.[16]  However, well-settled case law does not permit the Plaintiff to cure a

deficiency in the Complaint through a responsive pleading to the Motion.  See City of Pittsburgh

v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) ("When deciding a motion to dismiss, it

is the usual practice for a court to consider only the allegations contained in the complaint,

exhibits attached to the complaint and matters of public record."); Jordan v. Fox, Rothchild,

---

[16]    The parties argue about which applicable state law should apply to the Plaintiff's §
544(b) claim.  Whereas the Plaintiff asserts Ohio state law, Tabor contends that only the state
laws of Massachusetts or Pennsylvania are applicable.  The statute of limitations for
constructively fraudulent transfer claims is the same under the applicable laws of Massachusetts,
Ohio, and Pennsylvania: a claim for a constructively fraudulent transfer must be brought within
four years after the allegedly fraudulent transfer was made.  MASS. GEN. LAWS ch. 109A, §
10(b); OHIO REV. CODE ANN. § 1336.09(B); 12 PA. CONST. STAT. § 5109(2) (1999).  Although
the Plaintiff argues that its claim is timely because it was made within one year of IEAM's
discovery of the allegedly fraudulent transfers, the provisions in these statutes that permit for this
additional year apply only to claims for fraudulent transfers that were made with actual intent to
defraud (not transfers that are alleged to be constructively fraudulent).  MASS. GEN. LAWS ch.
109A, § 10(a); OHIO REV. CODE ANN. § 1336.09(A); 12 PA. CONST. STAT. § 5109(1) (1999).
Consequently, there is no actual conflict of laws that the Court may be called upon to resolve
because the statute of limitations for all three states is identical, such that the Plaintiff's success
on this issue would be unchanged by the choice of law.  Accordingly, absent the Plaintiff's
assertion of the equitable tolling doctrine, the Plaintiff's § 544 claim as to the transfers of IEAM
stock to Tabor that occurred more than two years before the Petition Date would be time-barred
and subject to dismissal.

O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994) ("In determining whether a claim should

be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its

attachments without reference to other parts of the record.").  When considering a motion to

dismiss for failure to state a claim under Rule 12(b)(6), a court "must limit itself to facts stated in

the complaint or in documents attached to the complaint as exhibits or incorporated in the

complaint by reference."  Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).  Thus,

"memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to

cure a defective complaint."  Branch v. Tower Air, Inc., No. 94 Civ. 6625, 1995 WL 649935, at

*6 (S.D.N.Y. Nov. 3, 1995) (citations omitted).  See also Adler v. Aztech Chas. P. Young. Co.,

807 F. Supp. 1068, 1072 (S.D.N.Y. 1992) ("Although plaintiffs did submit affidavits with their

opposition to this motion containing factual allegations that might suffice to state a claim against

Devon and Koch, those affidavits are inadmissible to cure the defect in a complaint when

deciding a motion to dismiss.").  Accordingly, the Court will dismiss, without prejudice, the

Plaintiff's claim under § 544(b) for failure to plead the applicable state law upon which the claim

is grounded.

    The Court also notes that Tabor argues in the Motion that the Plaintiff has inadequately

alleged its constructively fraudulent transfer claim under § 544 because the Complaint fails to

identify a specific creditor holding an unsecured claim that would be able to assert this cause of

action against Tabor, as required under § 544(b).  However, contrary to Tabor's contention, it is

well established that "[w]hen analyzing the sufficiency of a complaint for purposes of Rule

12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor

by name, although the trustee must ultimately prove such a creditor exists."  Pardo v. Avanti

Corporate Health Sys. (In re APF Co.), 274 B.R. 634, 639 (Bankr. D. Del. 2001) (citations

omitted).  See also Joseph, 385 B.R. at 125 (quoting Pardo, 274 B.R. at 639).  Here, the Plaintiff

alleges that the IEAM stock transfers "are avoidable by creditors holding unsecured claims

allowed under 11 U.S.C. § 502."  Complaint ¶ 80.  At this stage, the Court favorably construes

this allegation and infers that the Plaintiff is asserting that at least one such creditor exists, which

is all that the Plaintiff is required to do to withstand a motion to dismiss on this ground.

### 6.    § 546(e) Defense to Constructively Fraudulent Transfer Claims

Tabor argues that § 546(e) operates as a complete defense to the Plaintiff's constructively

fraudulent transfer claims under §§ 548 and 544.  Section 546(e) states, in relevant part:

> Notwithstanding sections 544 [and] 548(a)(1)(B), and 548(b) of
> this title, the trustee may not avoid a transfer that is a margin
> payment . . . or settlement payment . . . made by or to (or for the
> benefit of) a commodity broker, forward contract merchant,
> stockbroker, financial institution, financial participant, or securities
> clearing agency, or that is a transfer made by or to (or for the
> benefit of) a commodity broker, forward contract merchant,
> stockbroker, financial institution, financial participant, or securities
> clearing    agency,    in    connection    with    a    securities
> contract, . . . commodity contract, . . . or forward contract, that is
> made before the commencement of the case, except under section
> 548(a)(1)(A) of this title.

11 U.S.C. 546(e).  Tabor asserts that the transfers of IEAM stock were all transfers "made by or

to a stockbroker, financial institution, financial participant, or securities clearing agency," within

the meaning of § 546(e), because these shares were allegedly transferred by Computershare Trust

Company, IEAM's stock transfer agent, and allegedly cleared through National Financial

Services, LLC, a securities clearing agency.  Tabor further asserts that these transfers were all "in

connection with a securities contract," also within the meaning of § 546(e), because the stock

was issued pursuant to the Form S-8 plan.

To prevail on this defense, Tabor must establish that the transfers of IEAM stock were in fact made by a financial institutional or stockbroker, and were made in connection with a securities contract, which is extensively defined in 11 U.S.C. 741(7). The Court notes, however, that the material facts relating to the transfer of the IEAM stock at issue are not undisputed, such that further proceedings may be required to determine the precise entity that made the transfers at issue and the nature of these transfers. At this stage, however, the Court must take the factual allegations in the Complaint in the light most favorable to the Plaintiff. Here, the Plaintiff has alleged that the transfers were made by IEAM to Tabor, and that they were made in the form of charitable gifts and not pursuant to a securities contract.[17] Accordingly, the Court finds that the Plaintiff has alleged sufficient facts that could operate to make § 546(e) inapplicable and thus prevent Tabor from successfully availing itself of this defense. Whether § 546(e) will in fact bar

---

[17] In the Motion, Tabor requests that the Court take judicial notice of the Plaintiff's allegations in its complaint against Computershare Trust Company in another adversary proceeding related to the Debtor's bankruptcy case [Adv. No. 11-51877, Adv. Docket No. 1] to support Tabor's assertion that the stock transfers to Tabor were made by a financial institution or stockbroker within the meaning of § 546(e). The Plaintiff has not objected to this request. Well-established case law permits the Court to take judicial notice of documents that are either integral to the Complaint and whose authenticity is undisputed, or are matters of public record and may be considered without converting the Motion to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). Faulkner v. Beer, 463 F.3d 130, 133-35 (2d Cir. 2006). See also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (finding that contents of documents appearing on a court's docket are proper subject for judicial notice at the motion to dismiss stage); S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (finding that court may take judicial notice of public records including judicial proceeding and dispositions). The Court will grant Tabor's request for judicial notice of the Plaintiff's complaint in the aforementioned adversary proceeding and will consider this complaint without converting the Motion to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). Notwithstanding the requested judicial notice, the Court notes that Tabor will still need to establish that the transfers of IEAM stock at issue were made pursuant to a securities contract.

the Plaintiff's constructively fraudulent transfer claims is an issue that may be revisited on a motion for summary judgment or other future proceedings.

### 7.    Recovery of Avoided Transfers under § 550 (Count IV)

Section 550(a) of the Bankruptcy Code provides that, to the extent that a transfer is avoided under, inter alia, §§ 544 or 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee or such initial transferee." 11 U.S.C. § 550(a). For the reasons discussed above, the Plaintiff has alleged sufficient facts to plausibly support its fraudulent transfer claims under § 548.[18] The Court finds that the Plaintiff has sufficiently alleged that Tabor was the initial transferee of the IEAM stock that it received from IEAM, albeit through Mazzuto as a party-third intermediary. Thus, the Court finds that the Plaintiff has sufficiently alleged a § 550(a) claim for the recovery of allegedly fraudulent transfers, if and to the extent that such transfers are avoided.

### B.    Unjust Enrichment (Count II)

The Plaintiff also alleges a claim for unjust enrichment against Tabor. The Plaintiff asserts that Tabor was unjustly enriched by its receipt of the IEAM shares, that IEAM was consequently impoverished, that there is no justification for Tabor's gains, and that equity and good conscience support the return of Tabor's gains to IEAM. Complaint ¶¶ 65-68. However,

---

[18]    In the event that the Plaintiff amends the Complaint and adequately pleads its constructively fraudulent transfer claim pursuant to § 544(b), the Court notes that because the elements of a constructively fraudulent transfer claim under § 548 do not substantially vary from the elements of such a claim under § 544(b) (and the attendant state law), the Plaintiff's success in surviving a subsequent motion to dismiss with respect to its § 548 claim will mirror its success with respect to its amended § 544 claim.

the Complaint fails to state under which state law the Plaintiff asserts its unjust enrichment claim against Tabor.  For the reasons discussed above, the Plaintiff's failure to allege the specific law upon which its unjust enrichment claim is based necessarily means that the Complaint does not adequately apprise Tabor of the claim asserted against it by the Plaintiff.  Although the Plaintiff contends in the Opposition that Ohio state law should govern its unjust enrichment claim, for the reasons discussed above, the Plaintiff cannot cure this defect in the Complaint through a responsive pleading to the Motion.

The Court also notes that the parties dispute whether IEAM has standing to assert an unjust enrichment claim against Tabor.  Tabor argues that the Plaintiff cannot assert a claim for unjust enrichment in its own right because IEAM was not harmed by Tabor's receipt of the allegedly worthless shares at issue, and thus can only assert such a claim on behalf of its shareholders pursuant to a valid assignment of rights.  In contrast, the Plaintiff argues that the shares had value and that their improper transfer to Tabor harmed IEAM by depriving it of these shares, which it could have otherwise issued to valid recipients in exchange for value.  For the reasons discussed above, the Court concludes that the Plaintiff has sufficiently alleged that the IEAM shares were valuable and that as a consequence of their improper transfer, IEAM was deprived of their value while Tabor was unjustly enriched by their sale.

## V.  <u>CONCLUSION</u>

The Court concludes that Tabor has established that dismissal is warranted with respect to the § 544 claim and the unjust enrichment claim asserted in the Complaint, but with leave to amend the Complaint.  For the foregoing reasons, the Court will grant in part and deny in part the Motion.  An appropriate Order follows.

BY THE COURT:

Dated:    Wilmington, Delaware
          September 16, 2011          _____
                                      Brendan Linehan Shannon
                                      United States Bankruptcy Judge

28